IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MARK W. HANKE, | ) | |
| and KERRI E. HANKE, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 230418N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Assessment, dated July 19, 2023, for the 2019 tax year. A trial was held on February 5, 2024, in the courtroom of the Oregon Tax Court. Michael Blanchard, CPA, appeared and testified on behalf of Plaintiffs. Plaintiff Mark W. Hanke (Hanke) testified on behalf of Plaintiffs. Fadi Abouadas, tax auditor, appeared on behalf of Defendant. Plaintiffs' Exhibits PE1 to PE135 and Defendant's Exhibits DE1 to DE28 were received without objection.

I. STATEMENT OF FACTS

During the 2019 tax year, Hanke operated a horse boarding activity from Plaintiffs' 15.48-acre rural residential property in Polk County. (*See* PE2.) They purchased the property in 2015 and began the activity that year.[1] (*See* PE135 (historical results 2015-2023).) The activity started with four horses and grew over subsequent years. As of the trial date, the stable was at full capacity with 21 boarded horses and one personal horse. Despite that growth, Hanke reported losses from the horse boarding activity from 2015 through 2022. (PE135; DE1.[2]) He

_____

[1] Hanke was the primary witness at trial and, unless otherwise noted, facts are based on his testimony.

reported a profit for the first time in 2023. (PE135.) Defendant reviewed the activity for the 2019 tax year, determined that Hanke did not operate the horse boarding activity for profit, and disallowed the loss for the 2019 tax year.

The parties presented additional evidence at trial about the horse boarding activity. Given the multi-factor analysis required under Internal Revenue Code (IRC) 183 to determine whether taxpayer engaged in an activity for profit, the court will discuss the additional evidence presented in the context of that multi-factor analysis below.

## II. ANALYSIS

The issue presented is whether Hanke engaged in his horse boarding activity for profit under IRC section 183.[3] The IRC applies because Oregon defines taxable income by reference to it, subject to certain modifications not pertinent here. *See* ORS 316.022(6); ORS 316.048.[4] As the party seeking affirmative relief, Plaintiffs bear the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

IRC section 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." IRC section 183(a)

---

[2] For the 2015 and 2022 tax years, Hanke reported −$14,497 and −$2,184 in losses on Plaintiffs' tax returns. (*See* DE21, DE28.) An "updated" spreadsheet of historical results shows operating profit in those two years if expenses for depreciation, property taxes, and mortgage interest are removed. (PE135.) Defendant provided its own calculation excluding only mortgage interest and property taxes, finding a net loss in 2015 and a profit in 2022. (DE1.)

[3] Defendant presented an alternate issue concerning the amount of Hanke's 2019 Schedule C expenses, if the court concludes that he engaged in the horse boarding activity for profit: the expenses should be reduced from $94,373 to $75,683. (*See* DE1.) For purposes of this appeal, Plaintiffs accept that adjustment.

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

generally *disallows* deductions incurred in an activity that is *not* engaged in for profit.[5] Such not-for-profit activities may include sports, hobbies, or recreation. Treas Reg § 1.183-2(a). An activity is "engaged in for profit if the taxpayer's 'predominant, primary or principal objective' in engaging in the activity was to realize an economic profit independent of tax savings." *McMillan v. Comm'r,* 105 TCM (CCH) 1263 (2013), 2013 WL 461640 at *4 (US Tax Ct) (quoting *Wolf v. Comm'r*, 4 F3d 709, 713 (9th Cir 1993)). "The expectation of a profit need not be reasonable, but the taxpayer must conduct the activity with the actual and honest objective of making a profit." *Dodds v. Comm'r*, 105 TCM (CCH) 1472 (2013), 2013 WL 968241 at *4 (US Tax Ct); *see also* Treas Reg § 1.183–2(a). "[G]reater weight is given to objective facts than to the taxpayer's mere statement of intent." *Id.* But the court does not use "a reasonable person standard or substitute [its] own business judgment for what the [taxpayer] could have done better." *Metz v. Comm'r*, 109 TCM (CCH) 1248 (2015), 2015 WL 1285276 at *10 (US Tax Ct). Rather, the court focuses on taxpayer's "subjective intent." *Id.*

To determine whether an activity was engaged in for profit, Treasury Regulation section 1.183-2 provides nine non-exhaustive factors to be considered. This court has previously made a detailed review of federal case law concerning the profit motive in horse-related activities. *See Feola v. Dept. of Rev.*, TC-MD 160081N, 2018 WL 1505636 (Or Tax M Div, Mar 27, 2018). Here, the court looks to *Feola* to the extent relevant, but notes that *Feola* and many of the cases cited therein concerned horse breeding or some combination of horse-related activities such as breeding, training, showing, and boarding. This case concerns only horse boarding, an activity

---

[5] IRC section 183(d) creates a presumption that an activity is engaged in for profit if gross income exceeds deductions for three out of five consecutive taxable years. The presumption is modified to two out of seven years if the activity "consists in major part of the breeding, training, showing, or racing of horses * * *." *Id.* Plaintiffs did not suggest that either presumption applied in this case.

that is less speculative than breeding. *See id.* at *3 (finding "horse breeding is speculative by its nature"). The court now applies the nine factors to Hanke's horse boarding activity.

A. *Application of the Treasury Regulation Factors to Determine Profit Motive*

1. *The manner in which taxpayer carries on the activity*

"The fact that the taxpayer carries on the activity in a businesslike manner * * * may indicate that the activity is engaged in for profit." Treas Reg § 1.183-2(b)(1). Several sub-factors may be relevant: 1) whether taxpayer maintained complete and accurate books and records for the activity and used them to periodically analyze profit and expenses; 2) whether taxpayer conducted the activity similar to comparable, profitable activities; 3) whether taxpayer changed operating procedures, adopted new techniques, or abandoned unprofitable methods to improve profitability; and 4) whether taxpayer advertised. *See Feola*, WL 1505636 at *7-*11.

The first and third subfactors weigh in Hanke's favor. Hanke testified that, when he started the horse boarding activity in 2015, he engaged a lawyer to create an LLC, he consulted with an insurance agent to purchase coverage, and he worked with his CPA's office to set up QuickBooks. He tracked profit and loss for the activity from 2015 through 2023. (*See* DE1.) Hanke charges a base boarding rate to clients. When he started the activity, the base rate included grain, but feed costs increased significantly during the pandemic years requiring pricing adjustments. As a result, Hanke adjusted the base rate to cover hay, sawdust, blankets, and turn out; clients may pay additional sums for grain feed or to park a trailer. Those facts show that Hanke maintained books and records for the activity and adjusted his practices in response to high grain prices to improve profitability.

The second and fourth subfactors are neutral. Hanke testified that his "day job" is as a pastor with 38 years of experience. In his current position, he oversees 40 full-time staff, a

school, and a retreat center. Notwithstanding Hanke's significant experience, serving as a pastor is not comparable to horse boarding. Hanke testified that he does not need to advertise the horse boarding activity because the stables are full, and he has a waitlist. Overall, the first factor weighs in Hanke's favor because he conducted the activity in a businesslike manner.

2. *The expertise of taxpayer or his advisors*

"The main inquiry is whether petitioner received advice from the experts as to the accepted principles and economics of profitably running a business and not merely the general advice that a horse enthusiast would seek in training and showing horses as a hobby." *Betts*, WL 2990300 at *8. Consultation with persons who are knowledgeable about horses including professional breeders, trainers, veterinarians, advisors, and others in the industry supports a profit motive. *See Feola*, WL 1505636 at *11.

Hanke testified that he grew up with a grandfather who trained horses and worked with him for 10 years on that activity. In his current horse boarding activity, Hanke works with two equine veterinarians, two farriers, and a horse chiropractor on occasion. Those professionals are the primary if not sole source of his referrals. As noted above, Hanke consulted his CPA when he began the activity and tracked it using QuickBooks. This factor weighs in Hanke's favor.

3. *The time and effort expended by taxpayer in carrying on the activity*

"The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit." Treas Reg § 1.183–2(b)(3). Hanke testified that, after purchasing the property, Plaintiffs put in a lot of time to repair and improve it for horse boarding. They extended power to the barn, added new lights, placed better mats in the stalls, improved the arena surface, and added new fencing to the fields. Since Hanke started the horse

boarding activity, Plaintiffs clean stalls on the weekends and perform additional work to care for the horses, such as feeding, blanketing, and turning out.[6] It takes about 1.5 to 2 hours per day. Plaintiffs continue to perform all their own maintenance and repairs. This factor weighs slightly in favor of Hanke because he spends some, but not significant, time on the activity.

    4.      *The expectation that assets used in the activity may appreciate in value*

> "The term *profit* encompasses appreciation in the value of assets, such as land, used in the activity. Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized since income from the activity together with the appreciation of land will exceed expenses of operation."

Treas Reg § 1.183–2(b)(4). That regulation refers to another regulation, 1.183-1, for the definition of an "activity" in this context. *See id.* It states in relevant part:

> "Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. Thus, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land (that is, deductions other than those directly attributable to the holding of the land such as interest on a mortgage secured by the land, annual property taxes attributable to the land and improvements, and depreciation of improvements to the land)."

Treas Reg §1.183-1(d). To succinctly sum up the purpose of those regulations: "A taxpayer obviously can profit from land appreciation without engaging in a separate activity (such as horse breeding) that loses a lot of money. Thus, the land holding is treated as a separate activity from the farming unless the latter benefits the former." *Skolnick v. Comm'r*, TC Mem 2021-139, 2021 WL 5936986 at *17 (2021). The test is whether the "farming activity" less "landholding-

---

[6] Hanke engages cleaners during the week.

specific expenses [] generates net income that 'reduces the net carrying cost of the land.' " *Id.*

Hanke testified that Plaintiffs purchased the property for around $710,000 in May 2015. Plaintiffs wanted to run a horse stable, integrate adults with special needs including their own child, and provide a place for Hanke's mother to live with them. The property they purchased is 15.48 acres improved with a 3,300-square foot residence and 16,503-square foot equestrian arena with 22 stalls and a lean-to shed. (PE2, PE29.) As of October 6, 2023, the property was appraised at $1,315,000, reflecting total appreciation of $605,000. (*See* PE3.[7])

Plaintiffs purchased the property based on mixed motives, both personal and business. Undoubtedly one important motive was running a horse boarding operation and they selected a property with a 22-stall arena for that purpose. *See, e.g., Davis*, WL 1699543 at *4 (finding based on credible testimony and personal history that taxpayer purchased property as a working ranch). The amount of appreciation in the property from 2015 to 2023 exceeds Hanke's total losses during that time, even including landholding-specific expenses: compare $605,000 in appreciation with $160,241 net loss. (*See* PE135.) Excluding landholding expenses creates a more favorable picture for Hanke: a net profit of $13,255 as of 2023. (*See id.*) Thus, the court finds that appreciation in the land may be considered and weighs in Hanke's favor.

5. *The success of taxpayer in carrying on other similar or dissimilar activities*

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable." Treas Reg § 1.183–2(b)(5). As noted above, Hanke has been a pastor for 38 years, which is not similar to operating a horse boarding business. Thus, this factor is neutral.

---

[7] The county assessor assigned a real market value of $1,353,230 for the 2023 year. (PE9.)

6.      *Taxpayer's history of income or losses with respect to the activity*

"A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be indicative that the activity is not being engaged in for profit."

Treas Reg § 1.183-2(b)(6).

Hanke reported the following losses for his horse boarding activity:

| 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|
| ($14,497) | ($43,049) | ($29,583) | ($20,469) | ($25,950) | ($20,956) | ($17,216)[8] | ($2,184) |

(PE135; DE1.) For the 2023 tax year, he turned a profit of $13,773.[9] From 2015 to 2023, Hanke's reported losses totaled $160,241. Hanke analyzed his historical results excluding depreciation, property taxes, and mortgage interest, which shows that he realized an "operating profit" of $13,225 for the years 2015 to 2023. (*See id.*) Consistent with that analysis, Hanke testified that he has never had to make cash infusions into the boarding activity from personal funds; he made sufficient revenue to cover operating costs. Defendant questioned Hanke's calculation based on some items of depreciation but did not fundamentally disagree that the losses were reduced. (*See* DE3.) Defendant also questioned how Hanke would recoup his losses. In response, Hanke estimated that he had "10-15 good years left" to do so.

Hanke's reported losses from 2015 to 2022 weigh against him. However, several facts mitigate that series of losses. First, the amount of loss reduced over time, culminating in a profit in 2023, which is consistent with a business in a startup phrase. Hanke's revenue increased as he

---

[8] Plaintiffs reported the 2021 net loss as $17,326 on their table of historical results, but they reported a net loss of $17,216 on their 2021 tax return. (*Compare* PE135 with DE27.) They did not explain the discrepancy.

[9] Both parties presented evidence from after the 2019 tax year. "Evidence from years after the year in issue is relevant to the extent it creates inferences regarding the taxpayer's requisite profit objective in earlier years." *Dodds*, 2013 WL 968241 at *4.

filled the stables to capacity. (*See* PE135 (revenue grew from $17,295 in 2015 to $111,566 in 2023).) Second, Hanke's total loss of $160,241 over eight years could be recouped in 10 to 15 profitable years.[10] *Compare Feola*, WL 1505636 at *15 (taxpayer reported losses every year from 1999 to 2013, with losses increasing and exceeding $100,000 per year in 2008, 2009, and 2011-2013). Hanke reported revenue of $111,566 in 2023, which represented full capacity. Meanwhile, his expenses plateaued at $95,000 to $97,000 starting in 2019. (*See* PE135; DE1.[11]) Hanke testified that 2022 and 2023 were reflective of typical years at full capacity, though his professional fees were somewhat higher due to the audit. Hanke's expectation to turn a profit in future years is supported by his recent results. Overall, this factor weighs slightly against Hanke.

7.      *The amount of occasional profits, if any, which are earned*

"The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent." Treas Reg § 1.183–2(b)(7). Hanke had realized no profits as of 2019. However, he was able to achieve a profit in 2023 once the stables were at full capacity. Hanke's 2023 profit of $13,773 in 2023 is insufficient to cover prior year losses but, as discussed above, Hanke has a reasonable belief that he can recoup all his losses in 10 to 15 years.[12] This factor weighs slightly against Hanke.

/ / /

/ / /

---

[10] If the horse boarding activity continues to return a profit of $13,773 per year, Hanke will recoup his loss of $160,241 in just over 11.5 years.

[11] For the 2023 tax year, Hanke estimated expenses totaling $97,793. (PE135.)

[12] The court does not mean to suggest that a taxpayer must recoup all prior losses to have a profit objective. For a thorough discussion of recouping losses, *see Davis v. Dept. of Rev.*, TC-MD 190099G, 2020 WL 1699543 at *6-7 (Or Tax M Div, Apr 8, 2020).

8. *Taxpayer's financial status*

"The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved."

Treas Reg § 1.183–2(b)(8). Hanke testified that he makes about $120,000 from the church and receives nontaxable payments of $30,000 per year for taking care of a disabled person, so he has total resources of $150,000 per year. The horse boarding business is not a financial necessity for Plaintiffs. The court finds this factor is neutral because Plaintiffs do not rely on horse boarding for financial support, but do not have such significant income to suggest horse boarding is a tax shelter. *See, e.g., Skolnick,* 2021 WL 5936986 at *16 (taxpayer received $10 million from parents' trust and desired "a comfortable retirement").

9. *Any elements of personal pleasure or recreation*

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Treas Reg § 1.183–2(b)(9). Hanke was originally interested in running a horse stable to integrate adults with special needs, based on personal experience with his own child. He kept one personal horse in the stables. Hanke testified that one or two horses are fun, 20 are work. He acknowledged that he loves to work and takes pride in meeting his clients' needs and earning their trust. On balance, this factor is neutral. Although Hanke had some personal reasons to start the horse boarding activity and takes pride in it, those motivations are typical of a small business owner and do not outweigh his sincere desire to turn a profit. This factor is neutral.

B. *Conclusion on Profit Motive Based on Treasury Regulation Factors*

In sum, four factors weigh in Hanke's favor, three are neutral, and two weigh against

him. Looking more holistically at the evidence, the court is persuaded that Hanke more likely than not intended to achieve a profit from his horse boarding activity. Plaintiffs intentionally purchased a property with a 22-stall arena and Hanke started using it for boarding in the year of purchase. Although it took eight years and some pricing adjustments to achieve full occupancy and turn a profit, the operation appears stable and likely to remain profitable in future years. For all the foregoing reasons, the court finds that Hanke engaged in the activity for profit.

### III. CONCLUSION

Upon careful consideration, the court finds that Hanke engaged in his horse boarding operation with an intent to make profit. As a result, he may deduct expense for that activity in the 2019 tax year. As agreed upon by the parties, Hanke's allowable business expenses for the 2019 tax year are reduced from $94,373 to $75,683. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part. For the 2019 tax year, Plaintiffs are allowed Schedule C business expenses of $75,683.

Dated this _____ day of June 2024.

_____

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on June 25, 2024.***